(No. 21340.—

THE FOREST PRESERVE DISTRICT OF COOK COUNTY, Appellee, *vs.* J. CASPER SAUER, Appellant.

*Opinion filed October 22, 1932.*

COBURN, KEARNEY & COBURN, for appellant.

George A. Basta, and Frank S. Righeimer, for appellee.

Mr. Justice Dunn delivered the opinion of the court:

The Forest Preserve District of Cook county filed a petition in the circuit court of that county to condemn for the use of the district certain premises of J. Casper Sauer and J. Casper Sauer, Jr. The verdict of the jury assessed the compensation of the respondents at $10,700, and, judgment being entered on the verdict, J. Casper Sauer appealed.

The tract condemned contained about seven acres, was situated at the intersection of Just-a-Mere road and 143d street, about twenty or twenty-one miles south of the city of Chicago, and was about 990 feet long and 300 feet wide. A creek runs through the tract, and on it is a spring, around which a grotto has been built. On the bank of the creek, above the spring, is a story-and-a-half house, with cement floor, connected with a cement driveway for the ingress and egress of trucks used in handling the waters of the spring for commercial purposes. There is also a garage of 20 by 30 feet. The appellant owned the premises, and on June 28, 1930, had leased for a period of ten years the part on which the spring was located to Henry Sonnenschein and Frank Schreiner at a rental of $25 a month and a royalty of one-fourth of a cent for each gallon of water metered and sold from the springs or wells on the premises. The lessees were made parties and filed their cross-petition for compensation for their leasehold. During the trial the district and the lessees agreed upon the amount of compensation to be paid to the lessees, and the issue was submitted to the jury upon the question, only, of the compensation to be paid to the appellant.

The section of the county in which the land was located was sparsely settled. Just-a-Mere road was paved with concrete and 143d street was being paved at the time of

the trial. The appellant was a lawyer and had been buying and selling real estate, much of it in the same neighborhood, for himself and his clients for several years. He lived just south of the tract in controversy, having bought the tract of which it was a part in 1918. The entire tract extended from 143d to 147th street. The part to be taken was the north seven acres of that tract. Witnesses for the appellee testified as experts that in their judgment the highest and best use for the land was for country home sites and its value was $800 an acre. One witness, Morrison, testified that the entire value for such use was $6000. The appellant testified as to various sales which he had made in the vicinity, particularly one of the south 160 feet of the tract of which the property in question is a part, made in January, 1930, for $15,000. He testified that the highest and best use of the three acres leased to the spring company was for sanitarium purposes, and for such use, in his opinion, it was worth $60,000; that the highest and best use of the north 150 feet, being on the corner of Bachelor road and 143d street, was for business purposes, and for that use it was worth $20,000, and the rest of the property was worth $50 a front foot, the total value of the property being $125,000. T. W. McFarland and Lambert Hennessey, witnesses for the appellant, were of the opinion that the best use of the corner was for business and of the remainder for country home sites, and the former fixed the value of the entire tract upon that basis on the day the petition was filed, May 26, 1931, at $45,000. He estimated the corner to be worth $15,000 for business purposes. James W. McCormick considered the highest and best use of the corner to be for business and the remainder for a sanitarium and home sites and its total value for those purposes to be $28,000.

The jury viewed the premises, and, eliminating all question concerning the spring and the value of its waters for commercial purposes and all consideration of the spring

and the three surrounding acres as a site for a sanitarium, their verdict was well within the range of the evidence as to value and cannot be disturbed because of the evidence.

There was nothing in the evidence showing that the use of the waters of the spring for commercial purposes increased the value of the land over its value for business or for homes. The royalties paid under the lease ran from $9 to $16 a month. The lessees, in preparation for the sale of the waters of the spring for drinking purposes, made considerable expenditures, amounting to $14,000, for equipment and supplies, planted shrubs and filled in parts of the ground to beautify it and to adapt it to the use to which it was put. They also used the waters of the spring in the making of ginger ale. Though the water was palatable and wholesome so as to be easily sold to customers, the lessees had not been able to take any profits out of the business. The income had always been put back in the business and the business had felt the effect of financial depression. The spring supplied thirty-five gallons of water a minute. An analysis of its waters showed that it was not deleterious to health and that it might have some medicinal value. There was no evidence to show the money value of the spring and surrounding three acres for the commercial purposes to which they were being put when this suit was started. The view that the spring and the three surrounding acres were specially adapted to use as a site for a sanitarium rests largely upon speculation. The testimony and other evidence in the record show that there are many springs and wooded tracts in the neighborhood. The surface layer of that section of Cook county is a deposit left by glaciers, much thicker in some places than in others. The underlying bedrock is Niagara Falls limestone—a great stratum of rock of a maximum thickness of approximately 490 feet, lying nearly horizontal. The top surface of the limestone is undulatory. The undulations may amount to thirty or forty feet in a mile. The appellant testified

that the spring comes out of a fissure about three and a half feet above the surface of the creek. The limestone crops out there. The theory is that the water of the spring is not surface water but is forced up out of the limestone, and, therefore, never will be contaminated by surface water and the injurious elements frequently carried by surface waters. Waters of other springs in the neighborhood were examined by a competent chemist for their constituent elements but not bacteriologically. The examinations disclosed that there was no material difference between the waters of the several springs, though whether other springs were contaminated by injurious bacteria or not was not shown. The waters of the spring on the tract to be taken were not so contaminated and if they came from the limestone would never be. Upon the question of the earth formation, J. Harlem Bretz testified for the appellee. He is a geologist, well informed by theoretical training and practical experience in the subject of his testimony. His conclusion was that the particular spring and other springs in the neighborhood did not come from the underlying limestone stratum but from the surface. He had made examination of the particular spring and the contour of the earth in the neighborhood and had the benefit of certain borings for wells which had been made by William V. Wannamacher, a well digger. One of the wells was bored about half way between 143d and 147th street and there it was 55 feet to the rock. The other was at 147th street and was 59 feet to the rock. The surface of the ground at the former well is 35 feet higher than the spring level. From those facts Bretz deduced that the slope of the bedrock is to the south from the spring, because the undulations of the surface of the bedrock never are steep. The conclusion of the geologist was that the waters of the spring must be surface waters, not penetrating into the limestone but simply flowing along its surface and coming out at the crevice, as claimed by the appellee. There was evidence which tended

to show that there is not sufficient local territory above the spring to produce or store waters to supply the spring with the quantity it delivers. The spring is a gravity spring—that is, a spring whose waters are forced out by their own weight, and not an artesian spring, whose waters are forced up by pressure from below. The evidence in regard to the character of the spring and the source of its supply is not altogether convincing.

The practicability of the utilization of the three acres of this tract on which is the spring for a sanitarium is by no means shown by the evidence. Such use is a mere possibility, as the evidence shows. No market was shown for such purpose. The possibility of this use as an element of value rested upon the testimony of Dr. Elmore S. Pettyjohn, a witness for the appellant, who had given especial attention to the use of springs in various places in the world as health resorts or for sanitarium purposes, and at one time had been commissioned by the Governor of Michigan for the purpose of studying the springs of Europe and their use and the method of treatment given at the various spas and baths there. He had also operated the Alma Springs, in Michigan, for seven years, and was familiar with Saratoga Springs, Waukesha Springs, Colorado Springs, Excelsior Springs and West Baden Springs and their method of operation. He considered that the waters of the particular spring here involved might with proper use have some medicinal value, and that the spring, and the three acres including it, were well adapted for sanitarium use and for that use had a value of $50,000. It is obvious that the possibility of the use of the spring in the manner suggested, as a practical matter, affecting the market value of the land, was a mere matter of conjecture and of a character too speculative to form a basis for the assessment of compensation. The section had many springs, the origin of which was not accurately known. It was possible their origin was deep in the underlying limestone. If so, their

waters would have some value, at least, for drinking purposes. It is possible, too, that their waters may have some medicinal value if properly used, yet it is just as possible that the waters are of surface origin and are valueless for human consumption. The question is one of pure speculation, and the jury properly disregarded the possible use of a part of the tract for a sanitarium as an element to be considered in fixing value. The verdict was justified by the evidence and cannot be disturbed unless error prejudicial to the appellant occurred on the trial.

During the cross-examination of the appellant he testified that he had been a witness in a condemnation case tried in 1928 and testified that he had sold three tracts in the immediate vicinity. He was then asked by counsel for the appellee if he had not testified that he had offered a piece of property along the hard road for $400 an acre with 120 acres on the same road as the three acres of this land. Objection was made and sustained. Counsel for the appellee persisted in his inquiry and was admonished by the court not to follow that line any further. Despite this admonition the appellant was asked if he had not testified that he was offering acres for sale, without takers, on Bachelor road for $400 an acre. The appellant contends that as the land about which he was being asked was not involved in the case the questioning was prejudicial error, which the rulings of the court could not and did not correct. A fact not pertinent to the issue being tried, and which the law will not permit to be proved as having any tendency to create or justify an opinion, cannot be assumed in a hypothetical question. (*Sanitary District* v. *Corneau,* 257 Ill. 93.) Suggestive questions relating to incompetent evidence should not be asked. (*Chicago and State Line Railway Co.* v. *Mines,* 221 Ill. 448.) The object of such questioning of a witness is to get before the jury improper implications of fact not shown by the evidence. Bachelor road, the evidence shows, is the Just-a-Mere road on which

the land in question lies, and the implication sought to be conveyed to the jury by the appellee's improper questioning of the appellant was that the appellant was offering for sale acres on Bachelor road for $400 an acre and that the land to which he referred in his testimony was the land involved in this case, since he owned no other property on that road. The witness had stated that the property referred to in his former testimony was not the property here involved. The rulings of the court were on the theory that the lands were not the same. The court ruled promptly and correctly, "That is stricken from the record and the jury is instructed to disregard it, and the court will ask you not to follow that line." Counsel should have conformed to the ruling but subsequently sought to continue the subject. The court again ruled positively, stating finally: "I thought I made it clear; I don't want you to go into the matter of his testimony on some property not connected with this property; I don't think it is material to the issues; I think it would tend to mislead the jury, and I am standing by the ruling I made." These clear and positive rulings of the court were sufficient, in our judgment, to remove the possible prejudice of counsel's questions. The court stated that the land about which appellant formerly testified was not the land involved in this case and the former testimony should not be considered by the jury. The rulings were prompt and positive, and at the conclusion of the examination of the appellant it had been made clear to the jury that the appellant's testimony in the earlier case did not concern this land and had nothing to do with this case.

The appellee was permitted to show that there were many springs in the neighborhood and what chemical analyses of some of them showed. The appellant claims that the only purpose of the evidence was to show that springs were so common in the neighborhood that the existence of a spring on the property to be taken could add no value. This was, no doubt, the purpose and effect of the testi-

mony, but it does not follow that the admission of the evidence was error. It did not satisfactorily appear that any of the springs, even the particular one in this case, is of deep origin or that its waters had any special value except for sale as drinking water. It is not an improper deduction that the springs of the locality are of the same origin in the absence of convincing evidence to the contrary and that if one is of deep or shallow origin the others are also. The evidence was proper and no error occurred in this respect.

During the course of the trial the lessees of the spring settled with the appellee for the value of their leasehold interest. The court advised the jury of that fact and told them that he was not permitted to give details of the settlement but they were to consider the fair compensation of the property to the owner of the land. The appellant urges that the instruction so given to the jury may well have been so construed by them as to have excluded the spring from their consideration, particularly in view of the circumstances under which the statement was made, following, as it did, the advice of the court to the jury that the owners of the leasehold interest, who were operating the spring, had settled with the petitioner. We do not see how the appellant could have been prejudiced by this information. It simply left the jury to consider the compensation to be assessed to the appellant. No objections have been suggested to any of the instructions as to the measure of the compensation to be determined and no instructions requested were refused.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*