(No. 25570.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* DON LEGG *et al.* Appellants.

*Opinion filed October 11, 1940.*

DENNIS J. GODFREY, for appellants.

JOHN E. CASSIDY, Attorney General, GEORGE HALL, State's Attorney, and T. J. SULLIVAN, for appellee.

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

This is an appeal from a condemnation judgment of the county court of Montgomery county awarding appellants $420 for land taken and $820 for damages to land not taken, and from a prior order vacating an order dismissing the petition for condemnation.

Appellant Donn Legg, owns 57.78 acres of land adjacent to the west side of the city of Litchfield. Appellee filed a condemnation suit for a right-of-way 80 feet wide across the land as a part of Federal Aid Route No. 38 between Litchfield and Gillespie. ·The project between those two cities calls for a gravel-surfaced road, running diagonally across the Legg land from northeast to southwest, taking 3.99 acres. About twenty-two acres are south of the road and the remainder of the tract lies north of it.

In 1937, a tentative route over existing highways, known as the "South road" between Litchfield and Gillespie, was

laid out by a local committee and approved by appellee. The local committee secured all necessary right-of-way. The route was rejected by the Federal Department of Agriculture because it crossed the "Big Four" railroad twice, and also the Chicago and Northwestern Railroad. The route described in the petition, known as the "North road" crosses only the Chicago and Northwestern road, eliminating two grade crossings, and was approved by the Federal Department of Agriculture. That part of the "North road" in controversy lies about one-half mile north of the "South road." The "South road" is a State Aid road. The county did some grading and put in a few culverts, all of which work is available for the existing road. The "North road," as first surveyed, ran along the south side of the Legg tract. It was changed so as to take about two acres off the south edge, and finally located as described in the petition.

Appellants filed a motion to dismiss the petition, based largely upon the claim that the "South road" had been approved by appellee and was the better route in several particulars. It is urged that it intersects existing roads not touched by the "North road;" that it furnishes easier access to the Litchfield hospital by coal miners; and that the city built a hard road to connect with the "South road." A hearing on the motion was had and the petition was dismissed. Shortly thereafter, the term of the presiding judge expired and his successor took office. Within thirty days from the entry of the order of dismissal, appellee filed a motion to vacate it, reciting, among other grounds, the elimination of grade crossings, and charging usurpation of the powers of appellee and the Department of Agriculture. The motion was granted by the successor judge. The cause proceeded to a trial and the condemnation judgment was entered upon the verdict of a jury.

Appellants claim that in the absence of statutory authority a succeeding judge cannot vacate a final order of

his predecessor, and that there is no such statute in this State. The character of the dismissal order as final is not controverted. All courts of record have inherent power to vacate or set aside their judgments or orders during the term at which rendered. This power exists independently of any statute and has its foundation in the common law. (15 R. C. L. (Judgments) sec. 140.) Before the adoption of the Civil Practice act in this State, we frequently held that courts have jurisdiction over their final judgments and orders of a pending term, and during the term could set them aside. (*Unbehahn* v. *Fader,* 319 Ill. 250; *People* v. *Chicago, Paducah and Memphis Railroad Co.* 301 id. 135.) Section 50(7) of the Civil Practice act (Ill. Rev. Stat. 1939, chap. 110, par. 174 (7)) provides for vacating any judgment or decree within thirty days after rendition upon good cause shown by affidavit. Section 2 of the act relating to vacating judgments, decrees or orders (Ill. Rev. Stat. 1939, chap. 77, par. 83) provides for like vacation of any final judgment, decree or order upon motion. These acts substitute a period of thirty days in place of the term of court. Neither of them makes any distinction as to whether the vacating judgment is rendered by the same judge who entered the original judgment or by his successor. Judges of a court exercise the power vested in the courts as such and not in them as officers. That is to say, jurisdiction is vested in the courts, not in the judges. The authority and power of a judge are incident to and grow out of the power of the court itself. The court continues although the term of the judge has terminated, and where he is succeeded by another, the court retains its identity. It is the same court. Any application that can be made to the court may always be made to the court however it is constituted. (33 Corpus Juris, (Judges) 961. Thus, until the expiration of thirty days after the original order was entered, the court had jurisdiction to entertain an application to vacate it, whether

the same judge or his successor was presiding. Otherwise, the statute would be nullified by a mere change of personnel of the court and litigants deprived of substantial rights.

In *Village of Hinsdale* v. *Shannon,* 182 Ill. 312, we recognized the right of a successor judge to pass upon a motion for a new trial and sign the bill of exceptions. In *Fort Dearborn Lodge* v. *Klein,* 115 Ill. 177, we held that where a succeeding judge was satisfied that an erroneous ruling as to the sufficiency of a plea was made by his predecessor he should have set the order aside. We said in that case: "The fact that the order was made by another judge is a matter of no consequence whatever. The power of the trial judge was precisely the same as if he had made the ruling himself. The ruling in either case would be the act of the court." While the order in that case was not a final order, the principle involved is the same. We have never held that a final order may not be set aside by a succeeding judge when application is duly made in the manner provided by the statutes mentioned. Those statutes expressly include final orders. In the light of their provisions and the fact that it was the court, not the judge, which had jurisdiction to entertain the application to set the prior order aside, the claim that the succeeding judge had no power to do so cannot be upheld.

Two railroad grade crossings of the "South road" are eliminated by the route described in the petition. A route originally selected may be changed by the Department of Public Works and Buildings where it appears that, as finally located, it is the best route for the people of the State generally and will sufficiently connect the designated communities. The right to make such changes eliminating grade crossings was upheld in *MacGregor* v. *Miller,* 324 Ill. 113, and *People* v. *Department of Public Works and Buildings,* 320 id. 117. The avoidance of such dangerous conditions is obviously paramount to any question of convenience. That is the situation in this case. The power to determine

the location of such highways is a legislative, not a judicial, function. It has been committed to the Department of Public Works and Buildings. Its exercise is not a proper subject for judicial interference or control in the absence of fraud, corruption, oppression or gross injustice. (*Weber* v. *Department of Public Works and Buildings,* 360 Ill. 11; *Boyden* v. *Department of Public Works and Buildings,* 349 id. 363.) The record does not show any circumstance which justified judicial interference in the location of the road as finally determined by the department.

On direct examination a witness for appellee testified he was familiar with the Legg property, its improvements, and land values in its vicinity; that he had been on the property four or five times, and taking into consideration the highest and best use for which it is adapted, he fixed the value at $45 to $48 per acre. On cross-examination he testified he knew of sales of other land in the vicinity, and from such sales, and the fact that he knew the land which was sold, he based his opinion as to the value of the Legg land; and that in fixing the value he considered that the highest and best use for which the Legg land is adapted is for grazing—pasture. He then testified the sales mentioned were for right-of-way for the road, and appellants' motion to strike his testimony as to value was denied. The ruling is assigned as error. When all of the testimony of the witness is considered, it is obvious that the real or dominating factor in his valuation was not the sales for right-of-way, but his knowledge of the land sold and the Legg land, the highest and best use to which it was adapted, and his knowledge of land values in the vicinity. There was no error in denying the motion.

A witness for appellants was asked on cross-examination if he had bought a farm within the last four or five years. An objection to the question was sustained as too remote. He was then asked if he did not buy 155 acres at $55 an acre. Appellants' counsel objected to the question on the

ground that the objection had been sustained and counsel for appellee was prejudicing the case, and asked that a juror be withdrawn. The request was overruled and the jury was instructed to disregard the question as to the $55. The question was improper and should not have been asked. Repeated offenses of this character tend to get before the jury assumed facts which the party has no right to prove and create a prejudice. (*Chicago and State Line Railway Co.* v. *Kline,* 220 Ill. 334.) In this case the court ruled promptly, clearly and positively and the rulings were sufficient, in our judgment, to remove the possible prejudice of the question. The court did not err in refusing to withdraw a juror. *Forest Preserve District* v. *Sauer,* 350 Ill. 116.

Appellants contend that, under the evidence, the compensation for land taken and for damages to the land not taken was clearly insufficient. Four farmer-witnesses for appellee, three of whom are township supervisors, fixed the value of the land at $45 to $50 an acre. Each of them qualified as to knowledge of values. Six farmer-witnesses for appellants, and one who is in the feed business, fixed the value at $200 an acre. Another farmer fixed it at $145 to $150 an acre. Only one of them testified he was acquainted with land values in the vicinity of the Legg tract or in the county. Another witness testified to the sale of a twenty-acre tract about one mile west of Route No. 66 two years previously at $150 an acre. Whether it was in the vicinity of the Legg tract is not shown. Legg and all the witnesses testified the highest and best use to which the land is adapted is for pasture. Legg deals in livestock He raises some corn on a part of the land and some of appellants' witnesses said the land is adapted to pasture and small farming. Fences separate the land into six fields. The livestock is moved from one field to another to allow grass to grow. The road through the tract requires 261 rods of fence. Appellants claim it will cost $551.20. Two other witnesses estimated the cost at $1.20 to $1.30 per rod. Wit-

nesses for appellants estimated the damage to land not taken to be from one-third of its value to eighty or ninety per cent. One witness for appellee testified its value would be the same and another that it would be increased $50 an acre on account of being available for business use. The verdict and judgment give appellants over $120 an acre for the land taken, and over $15 an acre damages to the 54 acres not taken. The jury viewed the premises and the verdict is within the range of the evidence. Damages awarded by a jury in condemnation proceedings will not be disturbed where the evidence is conflicting, the jury views the premises and the amount of compensation awarded is within the range of the evidence, unless the verdict appears to have been a clear and palpable mistake or the result of passion or prejudice. (*Department of Public Works and Buildings* v. *Foreman State Trust and Savings Bank,* 363 Ill. 13.) We find nothing in the record to justify a holding that the jury was mistaken or that it acted from passion or prejudice.

The judgment of the county court is affirmed.

*Judgment affirmed.*