[Civil No. 4242.   Filed June 23, 1941.]

[114 Pac. (2d) 896.]

STATE OF ARIZONA, ex Rel. JOHN L. SULLIVAN, Attorney General, Appellant, v. EDWARD M. CARROW and EDITH M. CARROW, His Wife; THE FEDERAL LAND BANK OF BERKELEY, CALIFORNIA; THE WESTERN BUILDING AND LOAN ASSOCIATION; WETA IVY CARROW, as Administratrix of the Estate of JOSEPH E. CARROW, Deceased; and JOHN DOE and JANE ROE, Appellees.

Mr. Joe Conway, Attorney General, Mr. A. R. Lynch, Assistant Attorney General, Mr. B. J. Choisser, Associate Counsel, and Mr. Frank X. Gordon, for Appellant.

Mr. Harlow H. Akers, Mr. John W. Murphy and Mr. Carl G. Krook, for Appellees.

LOCKWOOD, C. J.—State of Arizona, plaintiff, brought suit to condemn for highway purposes certain land belonging to Edward M. Carrow and Edith M. Carrow, his wife, defendants. Judgment was rendered fixing the damages for the condemnation, and from such judgment this appeal was taken.

The facts material to a determination of the case may be stated as follows: The home of defendants is located on the west half of section 26 and east half of section 27, township 24 north, range 13 west. At some time prior to 1936 the state highway department constructed transcontinental highway No. 66 through the lands above described. At the time of the original construction the state highway commission informed defendants where this highway was to be located, and the latter then said if given positive assurance that it would be so located they would construct extensive improvements adjoining it for the accommodation of the traveling public. The commission

assured defendants that such road location would be made and retained permanently, and that it was the desire of the commission that these improvements be made, whereupon defendants did establish a tourist camp and recreation area for the benefit of the traveling public. At some time in 1936 the commission relocated a certain portion of the highway. This new highway departed from the course of the old highway aforesaid some 400 feet to the east of defendants' recreation area as aforesaid and passed to the rear of and above it and again connected with the old highway about 900 feet to the west. The effect of this relocation was to divert the main traffic over highway 66 away from the place where defendants had their recreation area, and thus to greatly diminish the business which came to them by reason of such traffic, although the old highway remained open and usable.

It is admitted by defendants that the state highway department has the right to relocate and realign state highways, and, if necessary, to take any lands which are required for such purpose, but it is insisted, and not disputed by plaintiff, that reasonable compensation for the damage done to defendants, either by the actual taking of the land or by damage to a larger parcel of land of which the land taken is a part must be paid to the latter. The only question before us is whether the court properly adjudicated these damages.

Defendants claimed that the elements of damage were threefold. First, the value of the land taken; second, damage to the adjoining land not taken because of the increased difficulty of access to their recreation area caused by the location of the new highway; and, third, the flooding of their recreation area which they claimed was caused by the casting upon such area of an unusual amount of drainage caused by the construction of the highway in question, and by

the partial blocking of a canyon or dry wash which ran near the premises, so that in times of heavy rain this blocking would cause the area to be flooded.

The trial court found that the value of the land taken was $3,500; that the loss of convenient access to the buildings, and improper drainage, caused damage to the extent of $1,950, and that the obstruction of the dry wash caused damage to the extent of $3,000 to the land not taken. We consider these respective elements of damage.

The first question is whether the trial court could take into consideration the depreciation in the value of defendants' investment in their recreation area, caused by the loss of business due to the diversion of the route of the through highway. This is a situation which arises very frequently in the construction of highways, and particularly so in the west, where the original highways were constructed with the element of cost the chief consideration, and later were realigned to form a costlier but more convenient road for the traveling public. With the increased power and speed of automobiles, curves and grades which were of very little moment to the horse and buggy, or even to early motor cars, became not only inconveniences but positive menaces to safety. The highway departments all over the country have continually, therefore, relocated routes for the purpose of eliminating curves and grades so far as possible. In many instances, various structures, such as auto camps, refreshment stands and the like have been erected alongside of highways, and then through a later realignment have been left high and dry and practically worthless as business propositions, for it is a notorious fact that through traffic will not turn out from a main highway to patronize such establishments even a short distance away. It has frequently happened that the relocation of a highway

has practically destroyed the value of an investment of many thousand dollars. The question then is, may the highway department, after business investments have been made in reliance upon a certain location of the highway, or even an indication or promise by the department that the highway would not be altered, change its location for the convenience of the traveling public, and if it may do so, must the state pay, not only for the value of the land taken, but for the loss of property values due to the destruction of the business previously maintained.

So far as the right to change the location is concerned, we think there can be no question that when the commission, acting in a reasonable exercise of the discretion conferred upon it, determines that it is in the best interests of the public that the route of a highway be changed, it may do so, notwithstanding that the effect of such change is to seriously damage or destroy the value of property along the old line. The right to use such discretion cannot be surrendered by any state officers, and no promise or agreement by any of them can create a vested right in the holder of adjoining property that the main route shall continue to exist as promised. *Board of Commissioners* v. *Oklahoma State Highway Comm.*, 163 Okl. 207, 23 Pac. (2d) 681, 91 A. L. R. 235. Nor do defendants seriously contend that such promises are legally binding. They claim, however, that if the commission does choose to exercise this right, in determining the damage caused thereby to the property taken or injured the court may consider not only the change in the physical availability and accessibility of the property for business purposes but the psychological effect upon the habits of the traveling public of supplying it a more easily traveled route than the old one, even though the latter remains open and as available as

before. The case of *People* v. *Gianni,* 130 Cal. App. 584, 20 Pac. (2d) 87, 89, is strictly in point, and the reasoning of that court is so apposite that we quote therefrom as follows:

"Whatever of apparent hardships there may be in particular cases where roads have been created for public use when the country was new, as in this state, and for the temporary convenience of a sparsely settled country, a greater hardship would be entailed upon the public if these roads could not now be vacated or changed to meet the present situation without compensating those whose premises may abut thereon for the loss or inconvenience they may sustain, as, if that were the rule, none would consent to the change, and the added burden would be an embargo upon the creation of new and desirable roads. [Citing cases.] . . .

"No matter how we shape the facts in the instant case, the claim of damage rests wholly upon the relocation or removal of the highway. All that defendant suffers from the taking is the small area taken, for which he is compensated. His concession, hereinbefore noted, practically controls the case. This one result is unescapable. The injury causing the claimed damage is the change of route. . . .

"We are appreciative of the earnestness of appellant's contention and of the fact that much authority and many learned textwriters on the subject seem to support his theory. Yet we conclude that appellant seeks compensation for the loss of something he never had, something in which he had no claim of property right or ownership at any time; that something being the right and privilege, as against the state or any one else, to perpetuate the highway along and in front of appellant's lands. This is his sole loss, and we conclude it to be noncompensable in damages."

This rule is supported by many other cases, such as *Stanwood* v. *Malden,* 157 Mass. 17, 31 N. E. 702, 16 L. R. A. 591; *Cram* v. *Laconia,* 71 N. H. 41, 51 Atl. 635, 57 L. R. A. 282. Since no man can have a vested right in having traffic routed by his place of business, and since it is not contended that the traffic

could not, had it wished, have used the old highway instead of the new, we think that in determining the depreciation in the value of the land taken, or of the larger parcel of which it is a part, the loss occasioned by the fact that traffic no longer stopped as it had, and thus defendants' improvements were of no further value, cannot be considered as an element. This rule doubtless at times works a considerable hardship on the individual, but when he erects his improvements he is bound to know, as a matter of law, that the state has the right to change the location of the highway whenever it thinks advisable, and that he cannot expect to be paid for the loss of the value given to the premises for business use by reason of the location of the highway, if such location be changed. It is greatly to be regretted that promises were made to defendants that no change would be made in the location of the road, for their reliance thereon has cost them many thousands of dollars for which they can recover no compensation, but we can only apply the law as it exists. With this rule in view let us consider the evidence as to the value of the land taken, and the injury to the adjoining parcel of which it was a part.

So far as the land taken is concerned, the testimony of defendant Carrow is that it was worth approximately $1,000, because it was the only place on which he could build certain extensions on his recreation area which he had planned, and on which he had already done a considerable amount of work. We cannot say that under the circumstances the trial court could not reasonably accept this valuation, although the witnesses for the state place it at much less.

The second item is presented by the testimony of defendant that he had already had prepared cut stone for the new buildings which he was about to erect, which stone would be useless to him after the

land on which it was to be placed was taken. We think a reasonable construction under these circumstances would permit a recovery for the value of the stone which was cut, although not actually in place, to the same extent as if he had actually placed it on the ground in unfinished buildings.

The third item he testified to as constituting part of the value of the land was $1,500 which it would have cost him to prepare other land so that he could erect thereon the buildings which he had planned to place upon the land taken. We think that he may not be permitted to recover for the value of the stone on the theory that it was useless and at the same time to recover for the necessary preparation of the land upon which, according to his own testimony, this same stone could and would be used. One or the other might be allowed, but not both.

The trial court also found "by reason of the manner in which said new highway was and is constructed upon said right-of-way, ingress and egress to and from said tourist and recreational area, and to and from said new highway, was made much more difficult and inconvenient than the outlet of defendants from said premises to the old highway; . . . " and "by reason of the construction of said new highway, and of the manner in which the roadbed thereof was constructed, said roadbed carries a large flow of water to the immediate vicinity of the tourist cabins of said defendants located in their said tourist and recreational area which would not otherwise have reached said vicinity, and said defendants will be compelled to protect their property against such increased flow of water, . . . " and 'allowed $1,950 damages for these two items.

There is evidence in the record from which it could reasonably be found that because of the construction

of the new highway at a different curve and upon higher ground that the access over the old highway to defendants' premises was made more difficult, and also that the new highway caused certain water draining from above it to be collected and thrown upon defendants' premises through culverts in the highway at a place and in a quantity different from that which the natural drainage would have produced.

Plaintiff urges that so far as access to the premises is concerned, we have held in the case of *Grande* v. *Casson,* 50 Ariz. 397, 72 Pac. (2d) 676, and *In re Forsstrom,* 44 Ariz. 472, 38 Pac. (2d) 878, that no damages are due the abutting property owner which are caused by a change of grade in a highway already established. We so held in those cases, and based our holding upon the fact that when a right of way for a highway is once taken the owners are presumed to have been compensated for any change in grade which may thereafter be made by the public authorities, and that no further damages may be collected on account of such change, unless there is a statute expressly so providing. In the present case, however, the increased difficulty of access was not caused by a change in the grade on a right of way already established, but by the taking of a new right of way. We think in such cases the rule laid down in the Grande and Forsstrom cases, *supra,* does not apply, and that defendants were entitled to such damages as were caused by the increased difficulty of access to their premises. This is also true as to the increased flow of water cast on defendants' premises by the construction of the new highway and culverts. *Maricopa County, etc., Dist.* v. *Roosevelt Irr. Dist.,* 39 Ariz. 357, 6 Pac. (2d) 898. But upon a careful examination of the record, while we find ample evidence as to the injury, we find no evidence as to the amount

of damage caused thereby, or how much it would cost to restore a proper access and to protect defendants' premises against the increased flow of water.

The court also found that because of the obstruction of a dry wash near defendants' premises by the construction of the new highway, an inordinate amount of water was thrown on defendants' premises from the flash floods which, it is testified, regularly come down such wash. This, of course, was an item for which defendants were entitled to compensation. The court allowed $3,000 for the damages caused by such obstruction, and there is evidence in the record to sustain it. This concludes a consideration of the damages allowed and the record in regard thereto.

Since there is no evidence to sustain the finding of the court in regard to the amount of damages for the obstruction of access and casting of water upon the premises, and since damages could not be allowed both for the stone and the preparation of ground on which to use it, the judgment must be reversed and the case remanded for a new trial.

McALISTER and ROSS, JJ., concur.