(No. 30963.—

THE PEOPLE *ex rel.* Bernard Sandbach *et al. vs.* GUS (PETE) WEBER *et al.,* Appellees.—(FRED C. ENGELKE *et al.,* Intervening Petitioners, Appellants.)

*Opinion filed May 19, 1949.*

SIMPSON, J., took no part.

JESSE R. BROWN, and MUDGE & MUDGE, both of Edwardsville, for appellants.

DONALD M. BUCKLEY, of Edwardsville, and MALCOLM DURR, of Alton, for appellees.

Mr. CHIEF JUSTICE FULTON delivered the opinion of the court:

The State's Attorney of Madison County filed a complaint in *quo warranto* in the circuit court of that county on the relation of certain parties questioning the legality of the organization of Worden Community High School District No. 157 by challenging the right of its officers to hold office. The officers entered their appearance and answered, pleading justification, setting out the proceedings under which the district was organized and alleging that the same had been done according to law. Five taxpayers intervened on behalf of themselves and 450 other persons similarily situated. This intervening petition alleged among other things that the Superintendent of Public Instruction had not made a proper finding that said territory included in said school district constituted a compact and contiguous community as required by the law and that said State Superintendent did not file within the time as provided by statute his report with the county superintendent of schools concerning the proposed high school district. It was also alleged by the intervening petition that the school district did not have a suitable building and that the petitions for the organization of said district were not in proper form. The defendants answered the intervening petition and the intervening petitioners then filed a motion for judgment which was argued on July 7, 1947, and taken under advisement by Judge Edward F. Bareis. On September 10, Judge Bareis entered an order finding the district illegally organized and ordered a writ of ouster against the defendants. On September 11, 1947, the defendants filed a motion to set aside the judgment entered on September 10, and Judge Ralph L. Maxwell, another judge of said circuit court, did on March 15, 1948, set aside and vacate the order entered on September 10, 1947. On May 5, 1948, there was a trial of the case on its merits before Judge Maxwell and on July 30, 1948, he entered a decree finding

said district to be contiguous and compact and that the school district had been duly organized pursuant to law. The intervening petitioners have perfected their appeal directly to this court since a question of franchise is involved, and the State's Attorney of Madison County has entered his appearance in said appeal.

They contend as follows:

1. That Judge Maxwell was without authority to set aside or suspend the judgment entered on September 10, 1947, by Judge Bareis.

2. That the court erred in holding that the district was legally organized and that the territory included therein was a compact and contiguous community.

3. That the court erred in admitting certain evidence and in refusing to admit other evidence.

It appears from the record that on January 24, 1946, the county superintendent of schools of Madison County received a petition signed by 110 legal voters residing in a contiguous and compact territory having a population of not less than 1500 persons and an equalized assessed valuation of not less than $1,000,000 which petition described the territory proposed to be organized. The county superintendent transmitted a copy of said petition to the State Superintendent of Public Instruction on February 5, 1946. It appears that an election was called and held for that purpose on June 29, 1946, after the necessary notices had been given as required by law, and that a majority voted in favor of an establishment of a community high school district, and thereafter a board of education was duly elected, met and organized and has functioned as such. The territory involved in this proceeding is located in the north central portion of Madison County surrounding the community of Worden. It appears that at the election there were five polling places in the territory and these five polling places were situated in Worden, Hamel, Carpenter, Omphghent and Lamb, the latter four being small

settlements within said territory. It appears that there were 849 people voting and that 520 voted in favor of organization and 329 voted against organization. The tally by polling places is as follows:

| Polling Place | For | Against |
|---|---|---|
| Worden | 488 | 15 |
| Hamel | 3 | 142 |
| Carpenter | 23 | 40 |
| Omphghent | 1 | 64 |
| Lamb | 5 | 68 |

At the time the petition was filed for the organization of this district the applicable statute provided, "the Superintendent of Public Instruction shall within 90 days after receipt of notice of a petition prepare and file with the treasurer or county superintendent of schools a brief report concerning the proposed high school district." (Ill. Rev. Stat. 1947, chap. 122, par. 10-13.) The State Superintendent did not file his report until June 12, 1946, which was more than the 90 days as required by the statute. On July 29, 1947, a validating act (Ill. Rev. Stat. 1947, chap. 122, pars. 407.12 and 407.13,) became effective. "In all cases where the County Superintendent of Schools of any County has heretofore received a petition signed by one hundred or more legal voters residing in any contiguous and compact territory having a population of not less than 1500 persons and an equalized assessed valuation of not less than $1,000,000, which petition described said territory proposed to be organized into a community high school district, and after the filing of such petition a majority of the voters residing in such territory at an election called for that purpose by the said County Superintendent of Schools, voted in favor of the organization of such territory into a community high school district, and where at a subsequent election similarly called and held, a board of education was

selected by the voters of such territory, and such persons so acting as board members have met, organized as a board of education and functioned as such, each such election is hereby made legal and valid, and such territory is hereby declared legally and validly organized and established as a community high school district and a valid and existing school district and body politic and corporate of the State for the purpose of establishing and maintaining a high school, notwithstanding the failure of certain officials to perform their duties in connection with such elections or in connection with the organization of any such community high school district in the manner required by law."

The appellants have contended that Judge Maxwell was without authority to set aside the previous order entered by Judge Bareis. Under the Civil Practice Act, the court may in its discretion before final judgment set aside any default and may within 30 days after entry of judgment set aside any judgment or decree upon good cause shown. (Ill. Rev. Stat. 1947, chap. 110, par. 174(7).) The term "court" as used in the Civil Practice Act does not mean any particular judge but means the circuit court, since jurisdiction is vested in the court and not in the judges of the court. (*Department of Public Works and Buildings* v. *Legg,* 374 Ill. 306. *People ex rel. Callahan* v. *DeYoung,* 298 Ill. 380.) We, therefore, do not believe that any error was committed by Judge Maxwell in setting aside the previous order entered by Judge Bareis.

In the case of *People ex rel. Shriver* v. *Frazier,* 386 Ill. 620, we held that the provisions of the School Law requiring the State Superintendent to file his report with the county superintendent of schools, setting forth the matters required by section 89c (Ill. Rev. Stat. 1943, chap. 122, par. 97b,) to be mandatory. However, that decision was announced prior to the legislature adopting the validating act which became effective on July 29, 1947. From the record in this case it clearly appears that the community

high school district involved comes within the provisions of this validating act. Validating acts are entitled to a liberal construction to cure the evil sought to be remedied. (*People ex rel. Pillsbury* v. *Edvander*, 304 Ill. 400.) Likewise, every reasonable presumption will be resolved in favor of the validity of a school district and courts will not hold a district to be invalidly organized unless it clearly appears from the evidence that such is the case. (*People ex rel. Garrison* v. *Keys*, 313 Ill. 234; *People ex rel. Dole* v. *Standley*, 313 Ill. 46.) We believe that the validating act involved in this case certainly cured any defects which may have arisen by reason of the delay of the State Superintendent of Public Instruction discharging his duties as required by law. It appears that he did, in fact, submit his report by which he approved the organization of this community into a school district and that such was done prior to the election held by the voters in this district. Such being the case, we believe that the validating act applies in the case at bar and that any objection with reference to the delay of the State Superintendent in making his report does not render the school district illegal. As was stated in *People ex rel. Shriver* v. *Frazier*, 398 Ill. 386, "While the legislature could not, by curative law, dispense with the report of the Superintendent of Public Instruction as a condition precedent to the valid organization of a community high school district, or waive the statutory requirement that such report state the estimated results of the operation of a high school in terms of local tax rates, it was within the power of the legislature, by curative law, to make legal and valid the organization of a community high school district when such estimate contained in the report of the Superintendent of Public Instruction was inaccurate."

The appellants also contend that this district is not made up of a contiguous and compact community. There is considerable evidence indicating that the territory included

within this district is made up of several hamlets and that Cahokia Creek, which runs through this district, is over its banks on certain periods of the year and, therefore, makes transportation of pupils in the district difficult on occasion. It also appears that the public highways in said district are such that it is sometimes necessary for children attending this school to take a rather circuitous route in reaching school. However, it also appears that this territory is contiguous and is compact and since the advent of hard surface roads and motor busses distances are considerably lengthened over what formerly was considered to constitute a reasonable distance prior to such improvements. The fact that people residing in the district trade at stores or do their banking or attend church in villages or cities outside the district does not necessarily prove that the territory in which they live is not a part of the community for high school purposes. *People* v. *Standley,* 313 Ill. 46.

It is impossible to create a district which would afford the same conveniences to all the children to attend the school, and we have previously held that because certain children may occasionally miss school on account of road conditions, such factor does not render the district invalid. (*People ex rel. Gift* v. *Rote,* 312 Ill. 99.) Necessarily, some children must travel great distances and some must travel over worse roads than others, but such facilities do not require a holding that the district is not properly organized. (*People ex rel. Corrigan* v. *Patterson,* 305 Ill. 541.) In the case at bar the school district is approximately seven miles square and Worden, the largest populated place in said district, is more centrally located than any other populated area in the district. We believe that the trial court properly held that the territory comprising this district did constitute a community within the school law.

We have carefully reviewed the record and we believe that the trial of this case was conducted fairly and we do not believe that there is any reversible error in the court's

ruling on the evidence. We believe that the action of the trial court in holding said district to be validly organized was proper and the judgment is, therefore, affirmed.

*Judgment affirmed.*

Mr. JUSTICE SIMPSON took no part in the consideration or decision of this case.