367 P.2d 294

**VILLAGES OF EDEN AND HAZELTON, Idaho, Plaintiffs-Respondents,**

v.

**IDAHO BOARD OF HIGHWAY DIRECTORS OF the DEPARTMENT OF HIGHWAYS. State of Idaho, Defendant-Appellant.**

No. 9006.

Supreme Court of Idaho.

Dec. 1, 1961.

Wm. R. Padgett, Andrew M. Harrington and Ralph R. Breshears, Boise, for appellant.

Kramer & Walker, Twin Falls, for respondents.

Parry, Robertson & Daly, Twin Falls, amicus curiæ.

SMITH, Justice.

Appellant is herein sometimes referred to as the State Highway Department, also as the Board.

This appeal involves the validity of a determination by appellant of the location in Jerome County, of approximately 24.8 miles of the proposed federal-aid Interstate Highway 80-N, a four lane limited access freeway. Such portion of Highway 80-N is herein sometimes referred to as the Interstate.

Appellant, in cooperation with U. S. Bureau of Public Roads, after considering ten alternate routes for this portion of the highway, deemed three as worthy of

more detailed analyses. Subsequently, during 1958, appellant's planning and traffic division prepared an analysis designed to evaluate the advantages and disadvantages of the three proposed routes.

The plans of the proposed routes are designated "A," "B" and "C," respectively. All show identical easterly and westerly termini, i. e., on the west, near the junction of the proposed Interstate with U. S. Highway 95 some seven miles north of Twin Falls, and on the east, on State Highway 25 approximately one and a half miles west of the Jerome-Minidoka county line. Plan "A" would traverse six miles of desert land and 18.8 miles of rolling farm land; Plan "B," six miles of desert land and 19.1 miles of rolling farm land, and Plan "C," 19.4 miles of desert land and five miles of irrigated farm land.

Plan "A" proposes a route to extend from the west terminus southeasterly to a point near State Highway 50 where a proposed interchange would provide access to Twin Falls by way of Hansen Bridge. It then would continue due east past a point two miles south of the respondent Village of Eden, to the east terminus.

Plan "B" proposes a route coinciding with Plan "A", extending from the west terminus to the proposed State Highway 50 interchange; at that point it would extend southeast to a point one-half mile south of the Plan "A" route; then would continue

due east for 13 miles parallel to the Plan "A" route, and then curve one-half mile northeasterly to coincide again with the Plan "A" route to the east terminus.

Plan "C" would coincide with Plans "A" and "B" from the west terminus for approximately one and a half miles, then would extend due east past a point two miles north of Eden and, after crossing the Northside Canal, would extend generally in a southeasterly direction to the east terminus.

Appellant recommended the adoption of Plan "A", based upon the following factors:

"1. Effect of the proposed route on existing road systems;

"2a. Benefits to the road-user in the form of savings in distance and time;

"b. Cost to the road-user including construction, maintenance, property damage and right-of-way acquisition;

"3. Safety of operation on the road system; and

"4. Economic loss of farm production."

and listed the following basic data used in measuring those factors:

"1. Origin-destination traffic surveys;

"2. Volume and classification counts;

"3. Assigned traffic;

"4. Improvement cost estimates;

"5. Accident records; and

"6. Land use and projected development."

The "Origin-destination traffic surveys" and "Volume and classification counts" were actual surveys and counts of traffic on the highways. "Assigned traffic" is a projected . traffic volume figure computed mathematically on the basis of assumed normal traffic increases. The "Improvement cost estimates" involved a reconnaisance survey, followed by a detailed field inspection to determine the estimated costs of construction. The "Accident records" used were obtained by applying to traffic figures, previously found through the counts and surveys, certain accident equations to compute the number of accidents that could be anticipated on the alternative facilities. Consideration of "Land use and projected development" was limited to an assessment of the anticipated loss in annual gross farm income, using as a basis an annual crop value per acre in the county as shown by the "1954 Census of Agriculture," published by the U. S. Department of Commerce. In addition to these factors, appellant's 1958 route analysis contains a chart intended to show the effect of the Interstate on travel distance and travel time between Magic Valley communities. ("Magic Valley" refers to the area in the general vicinity of Twin Falls, and the vicinity intended to be traversed by the portion of Highway 80–N involved herein.)

Using this basic data, the route analysis sets out appellant's major findings, as follows:

"1. Traffic generation in the Magic Valley is mainly local in nature and is centered around Twin Falls and Jerome;

"2. The second major traffic generation in the Magic Valley is also. local in nature and is centered around the Rupert-Burley area;

"3. Through traffic generation completely outside of the Magic Valley is of third importance;

"4. The Eden-Hazelton Section of the Interstate Highway will require three interchanges for access to

"a. Eden,

"b. Hazelton, and

"c. Twin Falls;

"5. Local circulation of traffic in the immediate proximity of the Interstate Highway can be maintained by a system of grade separations and frontage roads * * *;

"6. Plans 'A' and 'B' will provide maximum relief for U. S. Highway 30 and State Highway 25;

"7. The Interstate Highway will increase the traffic flow on State Highway 50 with each plan; and

"8. A new bridge will be required across the Snake River north of Hansen on the Twin Falls connection to the Interstate under any plan."

Appellant, in such route analysis, then concludes:

"Plans 'A' and 'B' have the following advantages over the selection of a route north of Eden (Plan 'C'):

"1. Increased road-user savings in vehicle operating costs more than offset the additional construction cost and loss of farm production incurred with the alternates south of Eden * * *. Benefits to local traffic in reduced travel time and distances between communities * * *;

"2. Increased road-user safety resulting from a higher traffic transfer from the more hazardous existing highways * * *;

"3. Greater net gain to the economy in the amount of $195,000 per year for Plan 'A' * * *. A similar comparison for Plan 'B' would result in $149,-000 net gain per year;

"4. Conformance to the criteria established by the U. S. Bureau of Public Roads for the selection of Interstate Routes, i. e.:

"a 'connect as directly as possible the maximum number of cities of various population groups;'

"b 'traverse the most populous band of rural territory;'

"c 'be in accord with the highest traffic volumes in the areas traversed;'

"d 'consideration of topographic features;'

"e 'best serve our national defense.'

"Plan 'A' has a $45,600 net gain per year advantage over Plan 'B' * * *.

"It is concluded from the above comparisons that the advantages of plan 'A' outweigh those of plans 'B' and 'C'."

On November 24, 25, and 26, 1958, hearings were held at Twin Falls, Hansen, Eden, Hazelton, Kimberly, Murtaugh, Jerome and Burley. Prior to the hearings each such community was furnished with a brochure prepared by appellant outlining the route analysis previously made and its proposed approval of Plan "A", together with its reasons for approval. The hearings were conducted by appellant's Secretary, as its Hearing Officer. The testimony taken dealt with various anticipated effects

reasonably foreseeable from the adoption of Plan "A", as follows:

1. Damage to business, industry and enterprises in the Villages of Eden and Hazelton;

2. Damage to agricultural lands in the area;

3. Damage to canal systems and to school bus, mail and milk routes;

4. Excessive costs of obtaining the right-of-way;

5. Excessive loss of farm production;

6. The retarding of the development of Eden and Hazelton;

7. The stimulation of the development of Twin Falls;

8. Increased safety and convenience to more highway-users in the area;

9. General benefits, including increased convenience and safety, to the villages of Hansen, Kimberly and Murtaugh.

By its order dated December 3, 1958, appellant recited that it had considered the transcripts of the hearings, together with engineering, traffic and economic studies and preliminary right-of-way appraisals; also determined that Plan "A" would be of greater benefit to the State of Idaho than the economic loss and damage to the villages and cities concerned. Appellant thereupon adopted Plan "A" as the route for Interstate Highway 80–N through Jerome county. Appellant submitted such order to the interested cities and villages.

The villages of Eden and Hazelton appealed such decision to the district court, specifying as errors the following:

"a. (Appellant board) Did not consider the relative importance of the highway to cities and villages, existing business, industry and enterprises;

"b. The board did not consider the convenience of highway-users;

"c. The board did not consider the common welfare of the people of the State of Idaho or of the appellant villages;

"d. The board did not consider the natural resources, industry and agriculture of the area in question;

"e. The board did not consider the financial capacity of the State of Idaho to acquire the right-of-way along Plan 'A';

"f. The board did not consider the financial capacity of the State of Idaho to reconstruct and maintain the necessary state access roads;

"g. The proposed route would not be of greater benefit to the State of Idaho than the economic loss and damage resulting to the appellant villages;

"h. A more northerly alternate route commonly designated by the State

Highway Board as 'Plan C' would be of greater benefit to the State of Idaho and would cause less economic loss to the villages of Eden and Hazelton and would more closely fulfill the requirements set forth in Section 40–121, Idaho Code;

"i. The board did not follow the regulations prescribed in Idaho Code § 40–121; the board did not give consideration to the protests and objections and the testimony, both oral and documentary, which was introduced at the hearings held at Eden, Hazelton and Twin Falls pursuant to Sec. 40–121 Idaho Code as required by law;

"j. The State Highway Board's decision was based on erroneous and inaccurate information."

The trial judge characterized the issue presented to be whether, under Plan "A", the "benefits accruing to the State of Idaho are greater than the economic loss and damage to the villages of Eden and Hazelton."

The trial court without specifically finding that under the proposed plan there was an abandonment, relocation, or replacement by a new road, of a highway serving or traversing the villages of Eden and Hazelton, or the area in which they are located (I.C. § 40–121), concluded that on the appeal the court had jurisdiction, not only to review the record of the original hearings, but also to allow introduction of additional evidence.

The trial court found for the State Highway Department on specifications of error "c," "d," "e," and "f," and for the villages of Eden and Hazelton on specifications "a," "b," "i," and "j." The court declined because of asserted insufficiency of the evidence, to determine whether specifications "g" and "h" had merit. The court, by its judgment, reversed in entirety the determination of the Board, with instructions that it hold new hearings, limited to consideration of Plans "A" and "C".

The State Highway Department appealed from this judgment and from the order denying its motion for a new trial.

Appellant, by its assignments of error deemed necessary to be considered in the disposition of this appeal, in effect urges:

First: The district court did not have jurisdiction of the subject matter of the appeal;

Second: The judgment of the district court constitutes an attempted unconstitutional invasion by the judiciary upon the powers of the legislature delegated to the Idaho Board of Highway Directors of the Department of Highways, and thus an attempted violation of the constitutional doctrine of separation of the powers of state government.

In approaching the issue, whether the district court had jurisdiction to entertain

the subject matter of the appeal, the crucial question is whether, in arriving at its determination, appellant as a matter of law proceeded under I.C. § 40–120 or I.C. § 40–121.

The trial court adopted the view that the proceeding was pursuant to and governed by I.C. § 40–121 inasmuch as the court referred to the mandate of that section of the statute that the Board must "specifically find and determine that the benefits to the state of Idaho are greater than the economic loss and damage to the city or village affected," before it can abandon, relocate or replace by a new road, etc.

Moreover respondents (appellants in the district court) in their attempt to answer appellant's contention that the district court lacked jurisdiction to entertain the appeal, assume that the proceeding was within the purview of I.C. § 40–121 which, respondents assert, covers "situations such as that present in the instant case where a new highway is constructed for the purpose of taking the place of and superseding the use of an existing highway although the existing highway be not abandoned."

I.C. § 40–120 enumerates the duties and powers of the Idaho Board of Highway Directors. Subsection (2) clothes the Board with power to "determine which highways in the state, or sections thereof, the public interest requires shall be designated and accepted for the purpose of this

act as a part of the state highway system." Subsection (4) gives the Board power to "locate, design, construct, reconstruct, alter, extend, repair and maintain state highways when determined by the board to be in the public interest." No appeal is provided from any such administrative determination.

The first paragraph of I.C. § 40–121 provides:

"In determining which highways or section thereof, the public interest requires shall be a part of the state highway system, the board shall consider the relative importance of each highway to cities and villages, existing business, industry and enterprises and to the development of cities and villages, natural resources, industry and agriculture and be guided by statistics on existing and projected traffic volumes. The board shall also consider the safety and convenience of highway-users, the common welfare of the people of the state, and of the cities and villages within the state and the financial capacity of the state of Idaho to acquire rights-of-way and to construct, reconstruct and maintain state highways."

This portion of I.C. § 40–121 modifies I.C. § 40–120 by specifying the particular factors which the Board shall consider in determining which highways are required

by the public interest to be a part of the state highway system.

I.C. § 40–121 then provides:

"In making such determination [i. e., which highways the public interest requires shall be a part of the state highway system], the board must, *before it can abandon, relocate, or replace* by a new road, any highway serving or traversing any city or village, or the area in which such city or village is located, specifically find and determine that the benefits to the state of Idaho are greater than the economic loss and damage to the city or village affected. No highway serving or traversing any city or village shall be abandoned, relocated, or replaced by a new road serving the area in which such city or village is located without the board first holding a public hearing in such city or village." (Emphasis supplied).

The section then affords any affected city or village the right to appear at such hearing and object to the proposed action to "abandon, relocate, or replace by a new road, any highway," etc; continuing, the section further provides:

"The board shall give consideration to such protests and objections and make a written decision thereon determining whether or not the proposed action would be of greater ben-

efit to the state of Idaho than the economic loss and damage resulting to the city or village. * * *

" * * * an appeal may be taken from such decision by such interested city, village or board of county commissioners to the district court * *.

\* \* \* \* \* \*

"2. Appeal shall be heard and determined by the district court in a summary manner as in a suit in equity, and the trial thereof shall be a trial de novo on the issues framed. The court may affirm, reverse, or modify the order appealed from and may issue injunctions whenever it appears necessary for the protection of the interests of any party to said appeal."

The statute, I.C. § 40–121, provides for appeal to the district court by an affected city or village *only* when the Board proposes to abandon, relocate, or replace by a new road, any highway serving or traversing any city or village, or the area in which such city or village is located. Thus, respondents could appeal *only* if the proceeding involved proposed action by appellant to "abandon, relocate, or replace by a new road, any highway serving or traversing" respondent villages or the area in which they are located.

On the other hand, I.C. § 40–120 does not provide for an appeal from any determination of the Board within the

purview of and contemplated by such section of the statute. Moreover, our examination of I.C., Title 40 and of the Constitution fails to disclose any provision for such an appeal. The right of appeal, except when secured by the Constitution, is dependent entirely upon legislative grant. Idaho Const. Art. V, § 13; 4 C.J.S. Appeal and Error § 18b, p. 98; Long v. State Insurance Fund, 60 Idaho 257, 90 P.2d 973; Vaught v. Struble, 63 Idaho 352, 120 P.2d 259; Haines v. State Insurance Fund, 65 Idaho 450, 145 P.2d 833; Young v. Board of County Commissioners, 67 Idaho 302, 177 P.2d 162; Farmers Equipment Co. v. Clinger, 70 Idaho 501, 222 P.2d 1077.

If the proceeding under consideration here constitutes a determination by appellant Board, in the public interest, for the location and construction of a new highway, (I.C. § 40–120), as appellant contends, not involving proposed action by the Board to abandon, relocate, or replace by a new road, any highway serving or traversing respondent villages or the area in which they are located, (I.C. § 40–121), then such determination, being the exercise of delegated governmental functions, is not subject to judicial interference or control. Department of Public Works and Buildings v. Legg, 374 Ill. 306, 29 N.E.2d 515.

█ In 40 C.J.S. Highways § 177, p. 25, is enunciated the rule, well supported by authority, that the construction, maintenance, and repair of public highways is a governmental function which belongs primarily to, and may be exercised by, the state and the state legislature, and that the duty of performance of such work may be conferred or imposed upon a designated officer, body, or agency, such as a state highway department, commission, commissioner, or director, or a state department of public works.

█ With respect to the power to locate a highway, the rule is succinctly stated in Department of Public Works and Buildings v. Legg, 374 Ill. 306, 29 N.E.2d 515, 518:

"* * * The power to determine the location of such highways is a legislative, not a judicial, function. It has been committed to the Department of Public Works and Buildings. Its exercise is not a proper subject for judicial interference or control in the absence of fraud, corruption, oppression or gross injustice."

See also 40 C.J.S. Highways § 179, p. 39; Thompson v. Seaboard Air Line Railroad Co., 248 N.C. 577, 104 S.E.2d 181; City of Elizabeth v. New Jersey Turnpike Authority, 7 N.J.Super. 540, 72 A.2d 399; City of Lakewood v. Thormyer (Ohio Com.Pleas, 154 N.E.2d 777, 784, aff'd 111 Ohio App. 403, 157 N.E.2d 431, aff'd 171 Ohio St. 135, 168 N.E.2d 289.

Appellant in determining the location of the portion of the Interstate 80–N involved in this proceeding in accordance with Plan "A", i. e., "in the vicinity of Eden," and "in the vicinity of Hazelton," further determined,

"* * * 2. State Highway 25 * * * would be retained on the State Highway system."

Appellant's exhibits show the present location of State Highway 25, which appellant will retain as a part of the State Highway system, and show that such highway both traverses respondent villages and serves the area in which they are situate.

Respondents do not stress the aspect either of abandonment or relocation of the highway serving or traversing respondent villages. Rather, they contend that the section of the proposed Interstate 80–N, involved in this proceeding, will "replace by a new road" the existing State Highway 25 which presently traverses respondent villages and serves the area in which they are located. Respondents argue that the meaning ascribed to the word "replace" is "to fill, to take the place of, to substitute;" that it is not necessary that the thing cease to exist in order to be replaced by another; but rather, that one thing will take the place of and substitute another, for the use and purpose for which the thing replaced previously existed. Hence, where a new road is constructed in the vicinity of an older or existing road for the purpose of handling traffic previously routed over the older road, the new road takes the place of and substitutes for the old road within the meaning of "replace" as used in I.C. § 40–121.

Respondents' position is untenable. If a highway is replaced whenever traffic is diverted in any degree from it to a new highway, then every highway is a replacement to the extent of the diversion of traffic. The plain language of the statute controverts this notion. The legislature intended to adopt a workable system, and provide appeal, not as to all determinations of the Board, nor particularly as to the determinations referred to in I.C. § 40–121, subds. (2) and (4), but only in a case where the Board proposes to "abandon, relocate, or replace by a new road," an existing highway serving or traversing a city or village or its locale.

The record clearly shows that the Board, by its determination, located and proposes to construct, as a new highway, the portion of the Interstate 80–N involved in this proceeding, and that the Board will retain as a part of the State Highway system the presently existing State Highway 25 which traverses respondent villages and serves the area in which they are located. Obviously the new portion of the Interstate will not physically "replace by a new road" such existent portion of High-

way 25. That some traffic from Highway 25 may be diverted onto the new Interstate when constructed cannot be translated into loss or damage simply because no property right in the flow of traffic on a highway can be acquired. In People v. Ricciardi, 23 Cal.2d 390, 144 P.2d 799, 804, the Supreme Court of California recognizes such basic rule in the following language:

"* * * We recognize that the defendants have no property right in any particular flow of traffic over the highway * * *. If traffic normally flowing over that highway were re-routed or if another highway were constructed which resulted in a substantial amount of traffic being diverted from that through highway the value of their property might thereby be diminished, but in such event defendants would have no right to compensation by reason of such re-routing or diversion of traffic. The re-routing or diversion of traffic in such a case would be a mere police power regulation, or the incidental result of a lawful act, and not the taking or damaging of a property right."

See also State ex rel. LaPrade v. Carrow, 57 Ariz. 429, 114 P.2d 896; People v. Sayig, 101 Cal.App.2d 890, 226 P.2d 702; Walker v. State, 48 Wash.2d 587, 295 P.2d 328; State v. Peterson, 134 Mont. 52, 328 P.2d 617; Mabe v. State, 83 Idaho 222, 360 P.2d 799; Annotation, 118 A.L.R. 921.

We are therefore constrained to the view that the proceeding at bar and the determination by appellant Board falls within the purview of, and is governed by, I.C. § 40–120; that the Board, in the exercise of the power conferred by the legislature to determine which highways shall be designated and accepted in the public interest as a part of the State Highway system, located the portion of Interstate 80–N involved herein, and intends to construct it as a new highway, and that no appeal lies from such determination; that therefore, the district court lacked jurisdiction to entertain the appeal of respondent villages [appellants in the district court].

While we have considered appellant's remaining assignments of error, determination of the issues raised thereby is unnecessary in view of the conclusions we have reached.

The judgment is reversed and the cause remanded with direction that the appeal taken to the district court be dismissed.

No costs allowed.

TAYLOR, C. J., and KNUDSON and McFADDEN, JJ., concur.

McQUADE, Justice (concurring specially).

I.C. sec. 40–121 envisions wide latitude in applying discretionary powers by the Highway Board. This statute designates a special duty of the Board, very general in terminology, which should lead to the conclusion that hearings should be held whenever any question concerning the abandonment, relocation, or replacement by a new road is to be considered by the Highway Board. The Legislature used general language toward the end that communities and areas affected by highway programing should have an opportunity to express themselves at a formal Highway Board hearing. Because of this legislative attempt, the statute must be given a very liberal construction in its application by the Highway Board in providing hearings.

In part the statute provides:

"* * * No highway serving or traversing any city or village shall be abandoned, relocated, or replaced by a new road serving the area in which such city or village is located without the board first holding a public hearing in such city or village. * * *"

This provision is a remedial amendment to the original act which created the present Highway Board, and such amendment must receive a liberal construction to effectuate its purposes. 82 C.J.S. Statutes § 388, p. 918.

The Legislature expressed a mandate that the Highway Board itself conduct these hearings. A hearing as provided by the statute cannot be considered sufficient when an agent of the Board gathers information without the Board members' conducting the hearing. Where the duties of the Board are broad and general, agents may be used in carrying out their duties. However, where the statutory duty imposed expressly designates the Board to conduct the hearings, such as in this case, then the intended spirit of the law should be carried out.

This Court has said, in the case of Clayton v. Barnes, 52 Idaho 418, 16 P.2d 1056, 1058:

"'In accordance with the maxim *"expressio unius est exclusio alterius"*, where a statute enumerates the things upon which it is to operate, or forbids certain things, it is to be construed as excluding from its effect all those not expressly mentioned; and where it directs the performance of certain things in a particular manner, *or by a particular person,* it implies that it shall not be done otherwise *nor by a different person.'* 59 C.J. 984, § 582."

See also 82 C.J.S. Statutes § 333, p. 666.

In other respects, I concur in the conclusion reached.