(No. 22819.—

ALBERT G. WEBER *et al.* Appellants, *vs.* THE DEPARTMENT
OF PUBLIC WORKS AND BUILDINGS *et al.* Appellees.

*Opinion filed February 21, 1935—Rehearing denied April 9, 1935.*

12

Orr, J., took no part.

Joe L. Johnson, and Fred W. Potter, Jr., for appellants.

Otto Kerner, Attorney General, and M. E. Cox, for appellees.

Mr. Justice Shaw delivered the opinion of the court:

The act generally known as the Hundred Million Dollar Bond Issue act (Cahill's Stat. 1933, p. 2438,) provides for and describes Route 96 as follows: "Beginning at East Fort Madison and extending in a southerly direction to Ursa (with a suitable connection to Warsaw) affording East Fort Madison, Nauvoo, Hamilton, Warsaw, Lima, Ursa and the intervening communities reasonable connections with each other." This road is now completed except for a suitable connection between Nauvoo and Hamilton, which final connecting link of a little over twelve miles has been located by the Department of Public Works and Buildings between these two cities along what is known as the River road, an all-weather rock-and-gravel road which has been in existence nearly fifty years and which at the present time carries the normal traffic between the two cities. The appellants, forty interested property owners, seek by injunction to restrain the department from adhering to the location made by it, and propose and insist upon an alternative road known as the Conable road, which is a part earth and part gravel road lying from one and a half to five miles east of the River road. For this road they claim a greater utility on behalf of the people of the

State at large, a greater safety, a lower original cost of construction and a greater factor of economy and convenience in operation. It is claimed by the appellants that the advantages of the route proposed by them are so great as compared with the River road, designated by the department, that there is no question of discretion involved, and that the department is without authority, under the act, to use the road which it has selected. Upon a full consideration of the whole case the circuit court dismissed the bill for want of equity, and it is this decision which we are asked to review.

It appears from the map in the record that the Mississippi river runs in a southwesterly direction from East Fort Madison to a point slightly west and south of Nauvoo; that it bends at this point in a southeasterly direction for a distance of four or five miles and from thence runs approximately south to the city of Hamilton. Route 96, so far as completed south of East Fort Madison, runs in a southwesterly direction for a short distance, thence directly south to a point about four miles east of Nauvoo and from thence directly west into Nauvoo. The southerly portion of Route 96, beginning at Ursa, runs approximately due north to a point west of the city of Warsaw, where a branch road runs into that city, while the main portion of Route 96 turns to the east for approximately a mile and from there runs directly north into Hamilton. The Conable road, for which the complainants contend, extends on a north and south line from a point about a mile east of Hamilton on what appears to be Route 9, to that point on Route 96 above mentioned where the road runs directly west into Nauvoo. According to the record this road could be completed along the Conable road with approximately ten miles of paving, whereas according to the route designated by the department it will require a little over twelve miles along the River road. It further appears from the evidence, and is not disputed by either party, that the River road will be

more expensive to complete by approximately $190,000; that the River road will have quite a number of curves in it, some of them as much as ninety degrees, as against which the Conable road would be an approximately straight north and south line of travel. The result of the building as contended for by complainants would be to leave Nauvoo on a stub or dead-end road, such as the statute provides for Warsaw and which has been completed, would leave no direct connection between Hamilton and Nauvoo except by going east out of Hamilton on Route 9 to the junction point, thence north to the corner west of Nauvoo and thence west into the latter city. For through travel between East Fort Madison and Ursa the Conable road would be about five miles shorter than the River road, whereas for direct travel between the cities of Hamilton and Nauvoo the Conable road would be approximately five miles longer than the River road laid out by the department. It also appears from the record that the city of Nauvoo has a large historical interest for students of religion and early Americana. It was for a considerable time the home of the Mormons, headed by Joseph Smith, and many religious monuments and places are visited there every year. The estimate placed upon this number of visitors is from twenty thousand to thirty thousand per annum. It further appears that Hamilton lies at the easterly end of the well known Keokuk dam, which likewise attracts large numbers of travelers from this and other States. It appears from the record that a register kept at the Keokuk dam indicates two hundred thousand visitors annually. The record further indicates that a large number of the visitors to the Keokuk dam wish to, and do, visit the historical city of Nauvoo, and likewise many of the visitors to Nauvoo wish to, and do, visit the Keokuk dam. The record shows that there is a presently existing large volume of traffic between the two cities, and that all of it now uses as a matter of choice the River road, which has been des-

ignated by the department. The record further shows, and it is not disputed, that the road designated by the department will be a route of great scenic beauty; that this road now attracts, and if improved will increasingly attract, large numbers of visitors in addition to those above mentioned who wish to see the Keokuk dam and the Nauvoo relics. It is further shown by the record that the Conable road traverses an ordinary farming district, without anything to give it any special interest or importance.

It is contended by the appellants that the question of scenic beauty cannot be considered and is not one of the factors in the problem, but as against this it is urged by the department that scenic beauty, the Keokuk dam and the historical importance of Nauvoo and its religious relics are among the principal reasons for many persons visiting the territory in question and that there is no through traffic of any importance to be considered. The department further shows by the map that except for such persons as wish to go to the city of East Fort Madison all other points are already adequately served by existing roads, and that the traffic to East Fort Madison is negligible compared with the traffic desiring to move between Hamilton and Nauvoo.

It is a proper administrative function of the Department of Public Works and Buildings, after giving fair consideration to all existing and proposed routes, to so locate the road as will best serve the interests of the whole people, and if it has done so, and has acted without fraud, corruption, oppression or gross injustice, this court will not interfere with its action. (*Department of Public Works* v. *McCaughey,* 332 Ill. 416; *Mowry* v. *Department of Public Works,* 345 id. 121; *Boyden* v. *Department of Public Works,* 349 id. 363.) And this is true although the court might differ with the department as to the wisdom of its action. (*Boyden* v. *Department of Public Works, supra.*) Where two highways are considered the department has the right to select either, as the best interest of

the State may appear. (*Watts* v. *Department of Public Works,* 328 Ill. 587.) In locating the road the primary interest to be considered is that of the State at large and not of any particular locality, (*People* v. *Department of Public Works,* 326 Ill. 589,) and when a road has, in fact, been the principal means of travel between two points for a long period of years, that is evidence that it is a more direct and feasible route. (*Watts* v. *Department of Public Works, supra.*) In *Boyden* v. *Department of Public Works, supra,* we held that we would not interfere with a decision of the department unless it clearly appeared from the evidence that there had been an abuse of discretion and an oppressive exercise of power in the location of the road; that it would not be enough to show that there existed a difference in opinion on the subject, or even that the court might have a different opinion from that of the officers of the department. We there held that the question of the location of the road, as well as the manner of its construction, were definitely committed to the judgment of the department, and that that judgment must be conclusive unless the evidence clearly established that the action taken had been oppressive and without reasonable grounds. We said: "If there is room for reasonable difference of opinion the department's action is conclusive."

Viewing the complainants' case in its most favorable aspect, they have established that the road proposed by them could be built at an estimated saving of $190,000; that it would have fewer curves, and therefore, presumably, be safer; that for such traffic as wished to move between East Fort Madison and Ursa it would be about five miles shorter than the River road, and that it might be cheaper of maintenance, although this point is disputed in the evidence, the department claiming the contrary. On the other hand, the River road is approximately five miles shorter than the Conable road between Hamilton and Nauvoo for the already large, and probably growing, traffic be-

tween those two cities; that when once laid it will be upon a rock foundation, and therefore, as the department claims, easier of maintenance and longer of life. It is shown to have been the principal and accepted means of travel between Nauvoo and Hamilton for forty-five years, and it must therefore be presumed to be a direct and feasible route. There is no evidence in the record of any large volume of traffic existing which wishes to pass from Ursa directly to East Fort Madison, whereas there is substantial evidence of a large traffic desiring to pass between Hamilton and Nauvoo. The wording of the statute establishing Route 96 must also be considered. It provides for a road beginning at East Fort Madison and extending in a southerly direction to Ursa, (with a suitable connection to Warsaw,) affording East Fort Madison, Nauvoo, Hamilton, Warsaw, Lima, Ursa and the intervening communities reasonable connections with each other. This indicates a legislative intention that a branch or spur-road be run into Warsaw but no such intent with respect to Nauvoo, although if the road were built as complainants insist it should be built, Nauvoo would be, like Warsaw, at the river-end of a spur or branch running nowhere else.

We are unable to find in this record anything more than that the choice of routes might be considered fairly debatable. The matter of cost is decidedly in favor of the road proposed by the complainants, and while this is always to be considered, it is not, of itself alone, a determining factor. (*MacGregor* v. *Miller,* 324 Ill. 113; *Watts* v. *Department of Public Works, supra.*) It is perfectly clear from the record that one of the reasons for any road in this vicinity is to afford a direct connection between Hamilton and Nauvoo, in accordance with the apparent legislative intent; that most of the traffic is due to the beauty of the scenery along the river, and that such traffic is largely brought to this vicinity by the Keokuk dam and the Mormon relics at Nauvoo. We believe the department has

located the road in accordance with the legislative intent, so as to accommodate the greatest traffic and so as to best serve the interests of the people as a whole. Certainly the case is far from possessing any of those elements of fraud, corruption, oppression, gross injustice or abuse of discretion which would justify us in interfering.

The circuit court did not err in dismissing the bill for want of equity, and its decree will be affirmed.

*Decree affirmed.*

Mr. Justice Orr took no part in this decision.