7 N.J. Super. 540 (1950)
72 A.2d 399
THE MAYOR, THE CITY COUNCIL, THE BOARD OF PUBLIC WORKS OF THE CITY OF ELIZABETH, AND THE CITY OF ELIZABETH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
THE NEW JERSEY TURNPIKE AUTHORITY, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY, AND THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 24, 1950.
*542 Mr. Louis P. Longobardi (Mr. Raymond A. Leahy) for the plaintiffs.
Mr. Augustus C. Studer, Jr., and Mr. George W.C. McCarter for the defendant The New Jersey Turnpike Authority.
FREUND, J.S.C.
The City of Elizabeth seeks to restrain the New Jersey Turnpike Authority from proceeding with the construction of a contemplated turnpike along the so-called Fourth Street Route through said municipality, allegedly in violation of the plaintiff's constitutional rights. The defendant has moved for dismissal of the complaint on the ground that it fails to set forth a cause of action upon which relief can be granted. Rule 3:12-2(5).
In the complaint, the plaintiff included the State of New Jersey as a party defendant, but it has subsequently been dismissed. The complaint also charged that the turnpike as a toll-paying highway is in violation of the provisions of Title 23, United States Code Annotated, Section 1 et seq., and in particular Section 9 thereof, that "all highways constructed or re-constructed under the provisions of this chapter shall be free from tolls of all kinds." However, at the argument of this motion the plaintiff abandoned the point and now confines its complaint to the charge "that the selection of the Fourth Street Route is in violation of the provisions of the Act creating the New Jersey Turnpike Authority" and "that any construction of the Act that would give to the Authority the power to select the Fourth Street Route by a mere conclusion on its part would render that part of the Act unconstitutional *543 and void." Both parties submitted affidavits on the motion.
The constitutional validity of the New Jersey Turnpike Authority Act (P.L. 1948, c. 454, as amended and supplemented by P.L. 1949, cc. 40 and 41; R.S. 27:23-1 et seq.), with the exception of Section 17, not pertinent here, was recently determined by the Supreme Court in New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1949). By the foregoing enactments, the New Jersey Turnpike Authority was "constituted an instrumentality exercising public and essential governmental functions, and the exercise by the Authority of the powers conferred by this act in the construction, operation and maintenance of turnpike projects shall be deemed and held to be an essential governmental function of the State." Section 3. The Turnpike Authority was created "to facilitate vehicular traffic and remove the present handicaps and hazards on the congested highways in the State, and to provide for the construction of modern express highways," and was "authorized and empowered to construct, maintain, repair and operate turnpike projects * * * at such locations as shall be established by law." Section 1. Among other powers it was expressly authorized by Section 5 "(k) to designate the locations and establish, limit and control such points of ingress to and egress from each turnpike project as may be necessary or desirable in the judgment of the Authority to insure the proper operation and maintenance of such project, and * * * (o) to do all acts and things necessary or convenient to carry out the powers expressly granted in this act." Section 19 declares "This act, being necessary for the welfare of the State and its inhabitants, shall be liberally construed to effect the purposes thereof."
By Chapter 41 of the Laws of 1949 and amended by Chapter 2 of the Laws of 1950, the Turnpike Authority was "authorized to construct, maintain, repair and operate a turnpike project at the following location: Beginning at a point to be selected by the Authority at State Highway Route No. 6 approximately three miles westerly from the westerly end of George Washington Bridge, and thence in a general southerly *544 direction through the counties of Bergen, Hudson or Passaic or both, Essex and Union to Middlesex county, and thence in a generally southerly and westerly direction through the counties of Middlesex, Monmouth or Mercer or both, Burlington, Camden, Gloucester and into the county of Salem to connection with a proposed new bridge across the Delaware river at or near Deepwater, Lower Penns Neck township, Salem county." It is the practically universal pattern for legislative enactments so to authorize the construction of highways, delegating the determination of the exact location to the discretion of the State Highway Commission or other similar agency. R.S. 27:6-1. Here, the authority inherent in the Legislature was delegated to the New Jersey Turnpike Authority, a duly created governmental agency of the State. Certainly, it would not be feasible for the Legislature in the statute to fix in minute detail the particular course of every portion of a contemplated highway. The Legislature is not staffed with highway engineers, surveyors and the other trained personnel who lay out highways. Customarily, legislatures fix the termini and only in general terms describe the course between. State Highway Commission v. City of Elizabeth, 102 N.J. Eq. 221 (Ch. 1928); affirmed, 103 N.J. Eq. 376 (E. & A. 1928); Mowry v. Department of Public Works, etc., 177 N.E. 753, 345 Ill. 121 (Sup. 1931); Boyden v. Department of Public Works, etc., 182 N.E. 379, 349 Ill. 363 (Sup. 1932); Weber v. Department of Public Works, etc., 195 N.E. 427, 360 Ill. 11 (Sup. 1935); Smith v. State Highway Commission, 57 S.W.2d 1014, 247 Ky. 816 (Ct. App. 1933).
Pursuant to the legislation by which it was created, the Turnpike Authority has made plans for the construction of the toll highway from the specified terminal points through various municipalities in the counties designated in the statute. The affidavits of the defendant indicate that the project has been under consideration for some years past and that it was only after long study and numerous hearings and conferences with officials of the City of Elizabeth that the Fourth Street Route was selected by the Authority as "the only feasible *545 route on which the turnpike can be located through the City of Elizabeth."
The State is sovereign and a municipality is a creature of the State. "In the absence of state constitutional provisions safeguarding it to them, municipalities have no inherent right of self-government which is beyond the legislative control of the state. A municipality is merely a department of the state, and the state may withhold, grant, or withdraw powers and privileges, as it sees fit. However great or small its sphere of action, it remains the creature of the state exercising and holding powers and privileges subject to the sovereign will." City of Trenton v. State of New Jersey, 262 U.S. 182, 67 L.Ed. 937 (1923), dismissing writ of error, State v. City of Trenton, 97 N.J.L. 241 (E. & A. 1921); New Jersey Interstate Bridge & Tunnel Commission v. Jersey City, 93 N.J. Eq. 550 (Ch. 1922); State Highway Commission v. Elizabeth, supra; New Jersey Good Humor, Inc., v. Bradley Beach, 124 N.J.L. 162 (E. & A. 1939); Jersey City v. Martin, 126 N.J.L. 353 (E. & A. 1941).
A legislature has authority to lay out the routes of the highways of the state and this power may be exercised through its own agencies or delegated to inferior bodies. To determine the location of highways is a legislative, not a judicial function. "Where the statute providing for a highway system designated particular routes without selecting the specific highways, the department vested with authority to make final decisions in the carrying out of the work has authority to select the particular highways within reasonable limits on the highway route designated by the statute." 40 C.J.S., Highways, § 179. Mowry v. Department of Public Works, etc., supra.
In the instant case, the Legislature of New Jersey has by statute authorized the construction of the turnpike between two terminal points through designated counties. The Turnipke Authority is an administrative agency acting for the State and is vested with discretion in the selection of the particular route which the proposed turnpike will traverse. When public agencies are vested with discretionary *546 power, a court of equity will not interfere unless there has been a plain and palpable abuse of discretion. A mere difference of opinion is not sufficient to justify the substitution of the Court's discretion for that of the duly constituted authority vested by the Legislature. Mowry v. Department of Public Works, etc., supra; Boyden v. Department of Public Works, etc., supra.
The observations of Vice-Chancellor Berry in State Highway Commission v. City of Elizabeth, supra, are pertinent. He said: "The legislature intended to confer complete power and the widest discretion upon the commission, in order that the construction of the state highway system might be facilitated in the greatest degree. Absolute discretionary power in the determination of the course of a state highway route through a city resulting in the taking of city property already devoted to a public use may be a dangerous power in the hands of an arbitrary state agency; but that is a matter for consideration by the legislature and not by the courts."
My allusion to the fact that the Turnpike Authority selected the route after deliberate consideration was not for the purpose of appraising the decision of the Authority, but only to indicate that it did not act precipitately or in disregard of the plaintiff's rights  on the contrary, it made its decision after full consideration of the factors involved.
I conclude, therefore, that the selection of the Fourth Street Route by the Turnpike Authority was well within the discretion vested in it by the Legislature. Accordingly, the defendant's motion to dismiss the complaint is granted.