In the Matter of the **BOROUGH OF FORT LEE**, Debtor.
Appeal of the **BOROUGH OF FORT LEE**, John H. Kerwien, Mayor, and William S. Corker, Borough Clerk.

No. 11857.

United States Court of Appeals Third Circuit.

Argued Feb. 20, 1956.
Decided Feb. 29, 1956.

William V. Breslin, Englewood, N. J., for appellants.

James D. Carpenter, Jersey City, N. J., for appellee.

Before MARIS, STALEY and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

The Borough of Fort Lee, a municipal corporation of New Jersey situate on the Hudson River in Bergen County, on December 1, 1938 filed in the United States District Court for the District of New Jersey a petition for relief under Chapter IX of the Bankruptcy Act, 11 U.S.C. A. § 401 et seq. On the same day that court entered an order approving the petition as properly filed. At the same time the Borough filed a plan of composition of its debts and subsequently certain amendments thereto. After proceedings which it is unnecessary here to describe in detail the plan as amended was in all respects confirmed by the court by an interlocutory decree entered on August 31, 1939. The interlocutory decree directed the Borough to deposit on or before October 14, 1939 the money, securities and other considerations to be delivered to the creditors under the amended plan to the disbursing and exchange agent appointed by the decree. On October 16, 1939 the court entered its final decree determining that the Borough had made available for the creditors affected by the plan the consideration provided for therein, that the Borough was discharged from all debts and liabilities dealt with in the plan and that the plan was binding on all creditors affected by it. The last paragraph of the final decree was as follows:

"This Court, the judge of which assumes to act pursuant to the provisions of Article VII of Resolution I of said plan, hereby reserves jurisdiction in this cause over the subject matter of said Article VII of Resolution I and of any resolution to the same effect adopted by petitioner, pursuant thereto and to the statute therein referred to."

The plan of composition approved by the district court was in the form of resolutions, two adopted by the Mayor and Council of the Borough and two, not material here, by the Board of Education of the Borough. Article VII of Resolution I established a Board of Liquidation, as authorized by New Jersey law,[1] to effect, manage and control the liquidation of the assets which were pledged by the plan to the Liquidating Fund provided for therein for the payment of Interest Funding Warrants to be issued under the plan in the amount of $1,445,796.21. The assets thus pledged consisted of real estate or rights or interests therein acquired by the Borough by virtue of the levy, collection and enforcement of taxes and special assessments theretofore levied or confirmed and of the certificates of tax sale or tax and assessment title liens standing in the name of the Borough and subsequent accruals thereto. Under Section 6 of Article VII of Resolution I the Board of Liquidation was empowered, inter alia, to liquidate the properties and assets pledged to the Liquidating Fund "by sale, exchange, lease or other disposition at such time or times and for such price or prices as the Board shall deem reasonable and prudent." Under section 15 of the same article the Borough agreed to do all acts, deeds and things required to effectuate such sales, exchanges, leases or other dispositions of real estate under the control of the Board and pledged to the Liquidating Fund unless the performance thereof should be suspended in accordance with the provisions of section 52:27–45.5 of the Revised Statutes of New Jersey.[2] The language of that section is as follows:

---

1. N.J.S.A. 52:27–45.1 et seq.

2. N.J.S.A. 52:27–45.5.

"The ordinance or resolution authorizing warrants hereunder and establishing any such board shall provide for periodic accountings as trustee in the court. The council or other governing body of any municipality in which any such board has been established and created, and the corporate authorities thereof, shall do and perform all acts, deeds and things as may be required by said board in order for said board to compromise, adjust or otherwise settle any certificates of tax sale or tax and assessment title liens or other receivables pledged to any special fund or funds created hereunder, and in order to foreclose any such certificates of tax sale and tax or assessment title liens pledged to said fund or funds or in order to effectuate the sale, exchange, lease or other disposition of any of the real estate or rights or interest therein under the control and disposition of said board and pledged to said fund or funds; *Provided, however,* that if the governing body of such municipality shall adopt a resolution questioning the necessity or advisability of any such act, deed or thing, and a certified copy of such resolution shall have been brought before and filed with the court, the performance of such act, deed or thing shall be suspended unless and until the court shall have entered an order or judgment determining the necessity or advisability for the performance thereof in order for said board to perform its duties under section four of this act. Upon the filing of such order or judgment, the resolution of the council or other governing body shall be of no further force and effect and the said governing body and corporate authorities of said municipality shall proceed to do and perform such act, deed or thing. Any such determination by said court shall be final and binding, and the board and the governing body and the corporate authorities of such

municipality shall not appeal therefrom."

Acting under the plan of composition (Article VII of Resolution I) the Board of Liquidation on December 30, 1953 accepted an offer by Sealantic Fund, Inc. to purchase approximately 15 acres of land lying along the top of the Palisades south of the George Washington Bridge. The Borough Council being dissatisfied with the proposed sale adopted a resolution on January 6, 1954 questioning the necessity or advisability of the sale. Under N.J.S.A. 52:27–45.5 the adoption of this resolution acted as a suspension of the sale "unless and until the court shall have entered an order or judgment determining the necessity or advisability for the performance thereof in order for said board to perform its duties." After the failure of lengthy negotiations the matter was finally brought on for hearing before Judge Fake of the district court, before whom all prior proceedings in the cause had been had. On January 28, 1956 he signed an order finding it necessary and advisable that the offer of Sealantic Fund, Inc. be accepted and ordering the Mayor and Borough Clerk of the Borough to execute the necessary deed. From this order an appeal has been taken by the Borough, the Mayor and the Borough Clerk which the Board of Liquidation has moved to docket and dismiss.

The motion must be granted. We think there is grave doubt whether the proceeding before Judge Fake for the approval of the sale to Sealantic Fund, Inc. was a judicial proceeding in the district court over which this court would have jurisdiction by way of appeal. The New Jersey statute, N.J.S.A. 52:27–45.1, states:

"The term 'court' as used in this act shall mean the United States Court or court in bankruptcy in which is or may be pending the proceeding begun by such petition of the municipality, or, if no such proceeding is pending in said court or if said court shall not assume to act

pursuant to this act, the Superior Court."

In the same vein section 16 of Article VII of Resolution I of the plan of composition provides:

"The term 'judge' as used in this Article VII shall mean the judge of the United States District Court or Court in Bankruptcy for the District of New Jersey or if the judge of said court shall not assume to act pursuant to this resolution, the justice of the Supreme Court presiding in the courts of Bergen County."[3]

It will thus be seen that Judge Fake's authority to make the order appealed from was derived from the provisions of the New Jersey statute which the plan of composition incorporated by reference. While by his final decree entered October 16, 1939 Judge Fake, as we have seen, reserved jurisdiction over the subject matter of Article VII of Resolution I pursuant thereto and to the New Jersey statute,[4] Chapter IX of the Bankruptcy Act is silent as to his power thus to participate in the administration of the financial affairs of the municipality after the entry of the final decree. It would seem arguable, therefore, that Judge Fake did not derive his power to enter the order in question from the Bankruptcy Act but rather from the plan of composition and the New Jersey statute which it incorporated.[5] If so he must have been acting as an arbitrator under New Jersey law rather than as a federal judicial officer since the legislature of New Jersey could hardly confer upon a federal court or judge jurisdiction not authorized by Congress.

We prefer not to decide this question, however, since it was not argued by the parties and inasmuch as there is another ground which requires dismissal of the appeal in any event. This is the fact that the appellants, who derive their power to participate in this proceeding wholly from the law of New Jersey,[6] were by that law, N.J.S.A. 52:27–45.5, expressly prohibited from taking this appeal. The last sentence of the statute cited provides:

"Any such determination by said court shall be final and binding, and the board and the governing body and the corporate authorities of such municipality shall not appeal therefrom."

Since the appeal was taken by a municipal corporation and its officers who by the law of New Jersey from which alone they derive their powers are expressly prohibited from taking it, the appeal must be regarded as taken without authority and must, therefore, be dismissed.

The appeal will be docketed and dismissed.

---

3. The justice of the Supreme Court presiding in the courts of Bergen County would now be the judge of the Superior Court presiding in that county.

4. This at the least amounted to formal acceptance by Judge Fake of the responsibilities tendered to him by Article VII of Resolution I and the New Jersey statute.

5. This view is supported by the grant of authority to the judge of the Superior Court of New Jersey if the judge of the United States District Court "shall not assume to act" pursuant to the resolution and the New Jersey statute.

6. City of Trenton v. State of New Jersey, 1923, 262 U.S. 182, 187, 43 S.Ct. 543, 67 L.Ed. 937; Mayor, etc., Elizabeth v. New Jersey Turnpike Authority, 1950, 7 N.J.Super. 540, 545, 72 A.2d 399, 401.